# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY MANNA, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>NABRIVA THERAPEUTICS PLC, and TED SCHROEDER,<br><br>                              Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Anthony Manna ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation:  (a) review and analysis of regulatory filings made by Nabriva Therapeutics plc ("Nabriva" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Nabriva; and (c) review of other publicly available information concerning Nabriva.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Nabriva securities between November 1, 2018 and April 30, 2019, inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Nabriva is a biopharmaceutical company that purports to develop novel anti-infective agents to treat serious infections.  One of the Company's product candidates is CONTEPO, an epoxide antibiotic developed by Zavante Therapeutics ("Zavante"), which the Company acquired in July 2018.

3.      On April 30, 2019, the Company revealed that the U.S. Food and Drug Administration ("FDA") would not approve its New Drug Application ("NDA") for CONTEPO due to "issues related to facility inspections and manufacturing deficiencies at one of Nabriva's contract manufacturers."

4.      On this news, the Company's share price fell $0.82 per share, or over 27%, to close at $2.17 per share on May 1, 2019, on unusually high trading volume.

1

5.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that:  (i) the Company's manufacturers failed to meet good manufacturing practices; (ii) these manufacturers would be subject to inspections by the FDA in connection with the Company's NDA; (iii) as a result of the manufacturing deficiencies, the Company's NDA for CONTEPO was unlikely to be approved by the FDA; and (iv) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

6.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Nabriva securities during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Nabriva is incorporated under the laws of Ireland with its principal executive offices located in Dublin, Ireland.  Nabriva's common stock trades on the NASDAQ exchange under the symbol "NBRV."

13.     Defendant Ted Schroeder has been the Chief Executive Officer ("CEO") of the Company since the closing of the Zavante acquisition and had been the CEO of Zavante. Defendant Schroeder (sometimes referred to as the "Individual Defendant"), because of his positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of his positions and access to material nonpublic information available to him, the Individual Defendant knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive

representations which were being made were then materially false and/or misleading. The Individual Defendant is liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

14.    Nabriva is a biopharmaceutical company that purports to develop novel anti-infective agents to treat serious infections. One of the Company's product candidates is CONTEPO, an epoxide antibiotic developed by Zavante, which the Company acquired in July 2018.

### Materially False and Misleading
### Statements Issued During the Class Period

15.    The Class Period begins on November 1, 2018. On that day, the Company submitted its NDA to the FDA for Intravenous CONTEPO to treat complicated urinary tract infections. In a press release, the Company stated, in relevant part:

> Nabriva Therapeutics plc (NASDAQ: NBRV), a clinical-stage biopharmaceutical company engaged in the research and development of innovative anti-infective agents to treat serious infections, announced it has submitted a New Drug Application (NDA) to the U.S. Food and Drug Administration (FDA) to seek marketing approval for its investigational intravenous antibiotic, CONTEPOTM (fosfomycin for injection) to treat complicated urinary tract infections (cUTIs), including acute pyelonephritis. CONTEPO has been granted Qualified Infectious Disease Product (QIDP) and Fast Track designations by the FDA for the treatment of several serious infections, including cUTI, which enables Priority Review of the NDA, following acceptance.

> \* \* \*

> The **NDA submission is utilizing the 505(b)(2) regulatory pathway and is supported by a robust data package**, including a pivotal Phase 2/3 clinical trial (known as ZEUSTM), which met its primary endpoint of statistical non-inferiority to piperacillin/tazobactam in patients with cUTI, including acute pyelonephritis.

(Emphasis added.)

16.     On January 4, 2019, the Company announced that the FDA had accepted the NDA for CONTEPO, stating in a press release:

> Nabriva Therapeutics plc (NASDAQ: NBRV), a clinical-stage biopharmaceutical company engaged in the research and development of innovative anti-infective agents to treat serious infections, announced that the U.S. Food and Drug Administration (FDA) has accepted the New Drug Application (NDA) and granted a priority review for CONTEPO™ (fosfomycin for injection) to treat complicated urinary tract infections (cUTIs), including acute pyelonephritis. ***The acceptance of the NDA indicates that the FDA has deemed the application sufficiently complete to allow a substantive review.*** The PDUFA (Prescription Drug User Fee Act) goal date for the completion of the FDA's review of the CONTEPO NDA is June 30, 2019. In addition to priority review, CONTEPO has been granted Qualified Infectious Disease Product (QIDP) and Fast Track designations by the FDA for the treatment of several serious infections, including cUTI.
>
>                 \* \* \*
>
> ***In the NDA acceptance letter, the FDA stated that no filing or potential review issues were identified. In addition, the Agency stated that it has not referred CONTEPO to an advisory committee meeting at this time.***

(Emphases added.)

17.     On January 14, 2019, the Company announced that the FDA had updated the Prescription Drug User Fee Act goal date from June 30, 2019 to April 30, 2019 due to "a clarification of the classification and subsequent expedited review period for the CONTEPO NDA submitted in October 2018."

18.     The above statements identified in ¶¶ 15-17 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that:  (i) the Company's manufacturers failed to meet good manufacturing practices; (ii) these manufacturers would be subject to inspections by the FDA in connection with the Company's NDA; (iii) as a result of the manufacturing deficiencies, the Company's NDA for CONTEPO was unlikely to be approved by the FDA; and (iv) as a result of the foregoing, Defendants' positive statements about the

Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### The Truth Begins to Emerge

19.    On April 30, 2019, Nabriva revealed that the FDA would not approve the Company's NDA for CONTEPO due to "issues related to facility inspections and manufacturing deficiencies at one of Nabriva's contract manufacturers." The Company stated in a press release:

> Nabriva Therapeutics plc (NASDAQ: NBRV), a clinical-stage biopharmaceutical company engaged in the development of innovative anti-infective agents to treat serious infections, announced today that it received a Complete Response Letter (CRL) from the U.S. Food and Drug Administration (FDA) for the New Drug Application (NDA) seeking marketing approval of CONTEPO™ (fosfomycin) for injection for the treatment of complicated urinary tract infections (cUTI), including acute pyelonephritis.

> The CRL requests that Nabriva address issues related to facility inspections and manufacturing deficiencies at one of Nabriva's contract manufacturers prior to the FDA approving the NDA. Nabriva plans to request a "Type A" meeting to discuss the FDA's findings. The FDA did not request any new clinical data and did not raise any concerns with regard to the safety of CONTEPO.

> "We will be working with the FDA in the coming weeks to gain a full understanding of the FDA's comments, with the goal of bringing this important treatment to patients as quickly as possible," said Ted Schroeder, Chief Executive Officer of Nabriva Therapeutics.

20.    On this news, the Company's share price fell $0.82 per share, or over 27%, to close at $2.17 per share on May 1, 2019, on unusually high trading volume.

### CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Nabriva securities between November 1, 2018 and April 30, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families

and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

22.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Nabriva's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Nabriva common stock were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Nabriva or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

23.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

24.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

25.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Nabriva; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

27.     The market for Nabriva's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Nabriva's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Nabriva's securities relying upon the integrity of the market price of the Company's securities and market information relating to Nabriva, and have been damaged thereby.

28.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Nabriva's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Nabriva's business, operations, and prospects as alleged herein.

29.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Nabriva's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

30.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

31.    During the Class Period, Plaintiff and the Class purchased Nabriva's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

32.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendant, by virtue of his receipt of information reflecting the true facts regarding Nabriva, his control over, and/or receipt and/or modification of Nabriva's allegedly materially misleading misstatements and/or his associations with the Company which made him privy to confidential proprietary information concerning Nabriva, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

33.    The market for Nabriva's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Nabriva's securities traded at artificially inflated prices during the Class Period.  On March 20, 2019, the Company's share price closed at a Class Period high of $3.17 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Nabriva's securities and market information relating to Nabriva, and have been damaged thereby.

34.    During the Class Period, the artificial inflation of Nabriva's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Nabriva's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Nabriva and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted

in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

35.    At all relevant times, the market for Nabriva's securities was an efficient market for the following reasons, among others:

(a)    Nabriva shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Nabriva filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Nabriva regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Nabriva was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

36.    As a result of the foregoing, the market for Nabriva's securities promptly digested current information regarding Nabriva from all publicly available sources and reflected such information in Nabriva's share price.  Under these circumstances, all purchasers of Nabriva's securities during the Class Period suffered similar injury through their purchase of Nabriva's securities at artificially inflated prices and a presumption of reliance applies.

37.    A Class-wide presumption of reliance is al so appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

38.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Nabriva who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### (Against Nabriva and the Individual Defendant)

39.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

40.     During the Class Period, the Company and the Individual Defendant carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Nabriva's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendant, and each of them, took the actions set forth herein.

41.     The Company and the Individual Defendant (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Nabriva's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  The Company and the Individual Defendant are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

42.     The Company and the Individual Defendant, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Nabriva's financial well-being and prospects, as specified herein.

43.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Nabriva's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Nabriva and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

44.    Individual Defendant's primary liability, and controlling person liability, arises from the following facts:  (i) the Individual Defendant was a high-level executive and/or director at the Company during the Class Period and member of the Company's management team or had control thereof; (ii) the Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) the Individual Defendant enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) the Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

45.    The Company and the Individual Defendant had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless

disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Nabriva's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by the Company and the Individual Defendant's overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, these defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

46.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Nabriva's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Individual Defendant, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Company and the Individual Defendant, but not disclosed in public statements by these defendants during the Class Period, Plaintiff and the other members of the Class acquired Nabriva's securities during the Class Period at artificially high prices and were damaged thereby.

47.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems

that Nabriva was experiencing, which were not disclosed by the Company and the Individual

Defendant, Plaintiff and other members of the Class would not have purchased or otherwise

acquired their Nabriva securities, or, if they had acquired such securities during the Class Period,

they would not have done so at the artificially inflated prices which they paid.

48.    By virtue of the foregoing, the Company and the Individual Defendant have

violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendant)

50.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully

set forth herein.

51.    The Individual Defendant acted as a controlling person of Nabriva within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of his high-level

positions, and his ownership and contractual rights, participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false financial statements filed by the

Company with the SEC and disseminated to the investing public, the Individual Defendant had the

power to influence and control and did influence and control, directly or in directly, the decision-

making of the Company, including the content and dissemination of the various statements which

Plaintiff contends are false and misleading.  The Individual Defendant was provided with or had

unlimited access to copies of the Company's reports, press releases, public filings and other

statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

16

issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.    In particular, the Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53.    As set forth above, Nabriva and the Individual Defendant each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of his position as a controlling person, the Individual Defendant is liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 22, 2019

Respectfully Submitted

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood, II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, _Anthony Manna_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Nabriva Therapeutics plc ("Nabriva" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Nabriva securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Nabriva securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Nabriva securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed _____5/2/19_____
              (Date)

_____
              (Signature)

_____
        (Type or Print Name)

**Nabriva Therapeutics  (NBRV)**                                           **Anthony Manna**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 4/30/2019 | Purchase | 140.00 | 2.9067 |
| 4/30/2019 | Purchase | 35.00 | 2.9800 |
| 4/30/2019 | Purchase | 190.00 | 2.9979 |
| 4/30/2019 | Purchase | 15.00 | 2.9993 |
| 4/30/2019 | Purchase | 110.00 | 2.3700 |
| 4/30/2019 | Purchase | 190.00 | 2.3900 |
| 4/30/2019 | Purchase | 25.00 | 2.6300 |
| 4/30/2019 | Purchase | 7.00 | 2.5800 |
| 4/30/2019 | Purchase | 13.00 | 2.5900 |
| 4/30/2019 | Sale | (380.00) | 2.0500 |